IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DYNEX CAPITAL, INC.,

        Plaintiff,

v.                                      Civil Action No. 3:18cv332

MICHAEL J. QUILLING,
*in his capacity as Receiver for*
*American Realty Trust, Inc.,*

        Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant, Michael J. Quilling, in his capacity as

Receiver for American Realty Trust, Inc.'s, ("Quilling"), Motion to Dismiss and Unopposed

Motion For Leave to Supplement the Record (the "Motion to Supplement the Record").[1] (ECF

Nos. 14, 20.) In his Motion to Dismiss, Quilling asserts three grounds for relief: (1) that the

Court lacks personal jurisdiction over Quilling under Federal Rule of Civil Procedure 12(b)(2);

(2) that the Court must abstain from ruling on the suit and transfer it to the United States District

Court for the Northern District of Texas, or dismiss the suit pursuant to the Anticipatory Suit

---

[1] Quilling seeks to supplement the record with the Declaration of Michael L. Guabert and the attached exhibits. Guabert's declaration details the files and other discovery located in Texas, which may support this action. In support of the Motion to Supplement, Quilling states that the "matters [in the Motion to Supplement] have arisen since the filing of the Receiver's Reply to Dynex[ Capital, Inc.'s] Response to the Motion to Dismiss and make the present record incomplete." (Mot. Suppl. 3, ECF No. 20.) Quilling claims that "[b]oth counsel [for Dynex Capital, Inc. and Dynex Commercial] are unopposed to the relief requested, however, Dynex would like to reserve the right to respond to the motion if it determines it needs to do so." (*Id.* 4.) Neither Dynex Capital, Inc. nor Dynex Commercial filed a response and the time to do so has expired.

Because Quilling provided notice to Dynex Capital, Inc., who expressed its agreement by filing no opposition to the supplement, and because he seeks to add information that arose after he filed his Reply, the Court will grant the Motion to Supplement. *See* Fed. R. Civ. P. 15(d). (ECF No. 20.)

Exception to the First-to-File Rule; and, (3) that Plaintiff Dynex Capital, Inc. ("Dynex Capital") failed to state a claim upon which relief can be granted under Rule 12(b)(6). (Mot. Dismiss 1, ECF No. 14.) Dynex Capital responded and opposed the Motion to Dismiss on all grounds, (ECF No. 18), and Quilling replied, (ECF No. 19).

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1332.[2] For the reasons that follow, the Court will grant the Motion to Supplement the Record. Utilizing *Brillhart* abstention, the Court will also grant the Motion to Dismiss and abstain from ruling on Dynex Capital's request for declaratory relief.

## I. Factual and Procedural History[3]

Two decades of litigation in both Texas state and Texas federal courts, which resulted in multiple multi-million-dollar judgments, led to Dynex Capital filing the declaratory judgment action currently pending before this Court. To accurately portray this case, the Court must

---

[2] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Dynex Capital is a Virginia corporation with its principal place of business in Virginia. Quilling is a citizen of Texas. The declaratory relief, attorneys' fees and costs sought in the Complaint exceed $75,000.

[3] Quilling brings the Motion to Dismiss pursuant to Rule 12(b)(2) and Rule 12(b)(6), as well as the Anticipatory Suit Exception to the First-to-File Rule. On a Motion to Dismiss pursuant to Rule 12(b)(2), the Court will "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Brooks v. Motsenbocker Advanced Devs., Inc.*, 242 F. App'x 889, 890 (4th Cir. 2007). The Court "may presume that any uncontradicted evidence submitted by either party is true." *Reynolds Foil Inc. v. Pai*, No. 3:09cv657, 2010 WL 1225620, at *1 (E.D. Va. Mar. 25, 2010). This standard substantially mirrors the Rule 12(b)(6) standard, the other ground upon which Quilling bases his Motion to Dismiss. Because Dynex Capital does not dispute the authenticity of the court documents that create the timeline of the related litigation that Quilling submitted in support of his Motion to Dismiss, the Court may rely on these documents and the timeline established by them in reaching its decision.

describe the litigation history of three related cases, each filed in a state or federal court in Texas. These actions—the Original Action, the Clapper Action, and the Fraudulent Transfer Action—serve as a puzzle piece created by the series of events leading to Dynex Capital's request for a declaratory judgment in this Court. In describing the facts of this case, the Court will also discuss the Litigation Cost Sharing Agreement, which stands at the heart of the Eastern District of Virginia litigation. The Court concludes its discussion of the facts by describing the two current competing actions: (1) the suit presently pending before this Court; and, (2) the inverse of this matter that Dynex Capital removed to the United States District Court for the Northern District of Texas and that the Northern District of Texas later remanded to a Texas state court.

## A.  The Original Action

The Court must begin its discussion of the facts with a brief synopsis of the related litigation. The related litigation began twenty years ago, on April 15, 1999, when American Realty Trust, Inc. ("ART"), Basic Capital Management, Inc., and Transcontinental Realty Investors, Inc. (collectively, with ART and Basic Capital Management, Inc., the "Judgment Creditors"), filed a breach of contract action against Dynex Commercial, Inc. (the "Original Action"), in the 68th Judicial District Court of Dallas County, Texas (the "Texas State Court"), *Basic Capital Management, Inc., et al. v. Dynex Commercial, Inc., et al.*, Cause No. DC-03-00675. The Judgment Creditors later added Dynex Capital as a defendant to the Original Action. The Judgment Creditors "sought to hold both [Dynex Commercial, Inc.] and Dynex Capital liable for the alleged breach of a $160 million loan commitment," along with other claims. (Compl. ¶ 9, ECF No. 1.)

Nearly five years after the Original Action commenced, a jury ruled in favor of the Judgment Creditors. That verdict resulted in extensive post-judgment litigation that percolated

3

up and down the Texas state court system for nearly a decade as the parties disputed

responsibility for paying damages.[4] *See Basic Capital Mgmt, Inc., et al. v. Dynex Commercial,*

*Inc., et al.*, 402 S.W.3d 257 (Tex. App. 2013).

On July 20, 2015, over sixteen years after the Judgment Creditors filed the Original

Action, the Texas State Court entered final judgment in the matter. As part of the final

judgment, the Texas State Court ordered approximately $47 million in damages against Dynex

Commercial, Inc. (the "Original Action Final Judgment"). The Texas State Court did not award

damages to the Judgment Creditors against Dynex Capital, the plaintiff in the matter currently

pending before this Court.

**B.**    <u>**The Clapper Action**</u>

Also in 1999, Art Midwest, Inc. and ART brought a separate but related lawsuit against

David Clapper, Atlantic Midwest, LLC, and Atlantic XIII, L.L.C. in a Texas federal district

court.[5] *Art Midwest, Inc., et al. v. Clapper, et al.*, No. 3:99-CV-2355-N (N.D. Tex.) (the

"Clapper Action"). Defendants counterclaimed, and the case concluded in a final judgment "in

excess of $73 million" in favor of the "Clapper Parties" as counter-plaintiffs. (Compl. ¶ 15.)

---

[4] Specifically, the Texas Court of Appeals reversed the Texas State Court's judgment

that [the Judgment Creditors] take nothing from Dynex Commercial, Inc. for the
alleged breach of the $160 [m]illion [c]ommitment and remand[ed] for entry of
judgment against Dynex Commercial, Inc. on the jury's verdict for damages for
breach of the $160 [m]illion [c]ommitment, for a new trial as to attorney's fees,
and for costs and prejudgment interest and post-judgment interest in an amount to
be determined by [the Texas State Court], and otherwise affirm[ed] [the Texas
State Court's] judgment in all other respects."

(Mot. Dismiss Ex. 1-3 the "Original Action Final Judgment" 1–2; ECF No. 14-1.)

[5] The parties initially filed the Clapper Action in the 14th Judicial District Court of
Dallas County, Texas. The defendants in that action later removed it to the Northern District of
Texas.

On December 11, 2015, five months after the Texas State Court issued the Original Action Final Judgment, the Northern District of Texas appointed Quilling as receiver "to recover ART's portion of the" Original Action Final Judgment. (*Id.* ¶ 16; *see* Mot. Dismiss Ex. 1-2 "Agreed Order Appointing Receiver Pursuant to Tex. Civ. Prac. & Rem. Code § 31.002," ECF No. 14-1.) With Quilling's position as Receiver for ART now established, the Court returns to the litigation in the Original Action.

**C.  Post-Judgment Discovery in the Original Action**

After the Texas State Court issued the Original Action Final Judgment and after the Northern District of Texas appointed Quilling receiver, the parties to the Original Action engaged in post-judgment discovery. On December 1, 2016, Quilling, in his capacity as Receiver for ART, filed in the Texas State Court the *Receiver's Application for Issuance of Turnover Order, and Brief in Support*, "seeking a court order for [Dynex Commercial, Inc.] to turn over to [Quilling] all of its non-exempt property, and to appoint Michael J. Quilling as Receiver over all of [Dynex Commercial Inc.'s] non-exempt assets." (Mem. Supp. Mot. Dismiss ¶ 9, ECF No. 15.)

The Texas State Court granted Quilling's request and entered an order giving Quilling broad powers as "the appointed Receiver in this case." (Mot. Dismiss Ex. 1-1 "Order Granting Motion for Turnover" 2, ECF No. 14-1.) Additionally, it gave Quilling "the power and authority to take possession of, maintain, operate, and/or sell all non-exempt leviable property of [Dynex Commercial, Inc.], including, but not limited to . . . all contract rights, whether present or future." (*Id.*) It also granted Quilling the ability to "exercise the right, without any obligation, to investigate and/or prosecute claims or causes of action [he] determine[d] to be appropriate." (*Id.* 5.)

In his Motion to Dismiss filed in this Court, Quilling asserts that post-judgment discovery in the Texas State Court included several hearings and revealed that Dynex Commercial, Inc. and Dynex Capital may have been engaged in fraudulent transfers to avoid the Original Action Final Judgment. "As a result of recognizing that . . . assets . . . had all been secreted from [Dynex Commercial, Inc.] to Dynex Capital," the Judgment Creditors filed an additional action, the Fraudulent Transfer Action. (Mem. Supp. Mot. Dismiss ¶ 10.) Because the litigation in the Fraudulent Transfer Action resulted in the discovery of the Litigation Cost Sharing Agreement, which forms the core of the action presently pending before the Court, the Court now turns to a brief discussion of the Fraudulent Transfer Action.

### D.    The Fraudulent Transfer Action

On April 26, 2017, the Judgment Creditors filed an action in Texas State Court against Dynex Capital and Dynex Commercial, Inc., asserting claims of alter ego, fraudulent transfer, and related claims (the "Fraudulent Transfer Action"), Case Number 3:17-cv-01147-D. In the Fraudulent Transfer Action, the Judgment Creditors sought to collect the Original Action Final Judgment. On May 1, 2017, Dynex Capital and Dynex Commercial, Inc. removed the Fraudulent Transfer Action to the Northern District of Texas.

While litigating the Fraudulent Transfer Action, the Judgment Creditors learned through discovery that Dynex Capital and Dynex Commercial, Inc., had previously entered into a Litigation Cost Sharing Agreement (the "Litigation Cost Sharing Agreement"). The Litigation Cost Sharing Agreement recognized that Dynex Commercial, Inc. "has limited financial resources and may be unable to fund certain costs associated with the [l]itigation."[6] (Compl.

---

[6] Dynex Capital and Dynex Commercial, Inc. amended the Litigation Cost Sharing Agreement three times. The amendments do not affect the Court's decision in this matter.

Ex. 1 "Litigation Cost Sharing Agreement" 1, ECF No. 1-1.) As part of the Litigation Cost

Sharing Agreement, the parties

> agree[d] to use good faith efforts to agree on the allocation of any settlements, claims, damage award or judgements [sic] to any plaintiff as a result of the [l]itigation, such allocation to be based on the proportionate contribution by each party to the amount of the settlement, claim, damage award or judgement [sic] entered. In the absence of any agreement between [Dynex Capital] and [Dynex Commercial, Inc.], such settlement claim or judgement [sic] will be allocated 20% to [Dynex Capital] and 80% to [Dynex Commercial, Inc.].

(Litig. Cost Sharing Agreement 1). In this case, Quilling focuses on the last sentence of this

excerpt to claim that, because the Judgment Creditors obtained a judgment against Dynex

Commercial, Inc., Dynex Capital must now pay 20% of that judgment.

With this background, the Court turns now to the instant declaratory judgment action and

the competing action, which pends before the Texas State Court.

### E.    The Declaratory Judgment Action and the Competing Action

On May 10, 2018, Quilling, through counsel, mailed to Counsel for Dynex Capital, a

letter demanding "immediate payment to the Receiver of 20% of the present amount of the"

Original Action Final Judgment. (Compl. Ex. 2 "Demand Letter" 2, ECF No. 1-2.) In the

Demand Letter, Quilling based his claim for monetary payment on Dynex Capital's promises set

forth in the Litigation Cost Sharing Agreement. Quilling estimated that Dynex Capital owed him

approximately $11,341,360.65. The Demand Letter stated: "If payment is not received within

ten (10) days of this letter, then the Receiver shall proceed to obtain the same via appropriate

legal process." (*Id.* 2.)

Dynex Capital did not respond to the Demand Letter. Instead Dynex Capital filed the

present declaratory judgment action in this Court on May 17, 2018. In its Complaint, Dynex

Capital seeks a declaratory judgment "that Dynex Capital has no obligation to [Dynex

Commercial, Inc.] or the Receiver under the Litigation [Cost Sharing] Agreement to pay any portion of the" Original Action Final Judgment. (Compl. ¶ 26(a), ECF No. 1.)

On May 24, 2018, one week after Dynex Capital filed this action, Quilling filed a "Third-Party Plaintiff's Original Petition" in the Texas State Court Original Action asserting breach of contract claims. (Mot. Dismiss Ex. 1-A "Third-Party Plaintiff's Original Petition," ECF No. 14-1.) In the Third-Party Plaintiff's Original Petition, Quilling sought to hold Dynex Capital liable for 20% of the Original Action Final Judgment, under the Litigation Cost Sharing Agreement. Quilling's case before the Texas State Court is the inverse of the declaratory judgment suit before this Court.

Quilling then filed in this Virginia federal litigation the Motion to Dismiss, which included as one of his grounds for relief that the Court must "abate and transfer this matter to Dallas to be combined with a competing suit under the 'Anticipatory Suit' rule." (Mot. Dismiss 1.) On January 9, 2019, the Court informed parties that "[b]ased upon the Court's review of the Complaint in this matter, the parties' briefing as to . . . Quilling's[] Motion to Dismiss . . . and the extensive litigation history of this matter, the Court may, *sua sponte*, transfer this matter to the . . . Northern District of Texas." (Jan. 9, 2019 Order 1, ECF No. 21.) The Court allowed each party to submit briefing on whether transfer was appropriate. In his response brief, Quilling noted his "consent[] to the transfer so long as all pending motions are transferred with the action." (Receiver Position Transfer ¶ 10, ECF No. 22.) Dynex Capital, on the other hand, opposed the transfer. (Dynex Capital's Opp'n Transfer 1, ECF No. 23.)

Meanwhile, on January 29, 2019, the Northern District of Texas remanded the inverse of this action to the Texas State Court. In response to the Northern District of Texas's remand, on January 31, 2019, the Court ordered "the parties to brief what effect, if any, the Northern District

of Texas's decision to remand the [i]nverse [s]uit has on the action presently pending before this Court." (Jan. 31, 2019 Order 1, ECF No. 24.) Each party filed its brief and response, and the matter is now ripe for disposition.

## II. Legal Standard: Abstention from Ruling on Declaratory Judgment Action

The Declaratory Judgment Act provides "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The Supreme Court of the United States has instructed that a federal district court may utilize the discretionary standard articulated in *Brillhart* to abstain from ruling on a declaratory judgment action pending before it when a parallel action pends before a state court.[7] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (discussing throughout *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)). In affording the district courts great discretion over declaratory judgment actions, the Supreme Court explained:

> a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial. . . . In the declaratory judgment context, the normal principal that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Id.*

---

[7] In reaching this conclusion, the Supreme Court specifically rejected the higher "exceptional circumstances" standard imposed in applying *Colorado River* abstention. *Id.* at 286. In *Colorado River Water Conservation Dist. v. United States*, the Supreme Court recognized that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given [to] them." 424 U.S. 800, 817 (1976). The *Colorado River* court constrained the district court's ability to abstain from exercising discretion over a case in favor of pending state court proceedings to only those situations involving "exceptional circumstances." *Id.* at 813. The *Colorado River* case did not concern a declaratory judgment, *see generally id.*, and the Supreme Court in *Wilton*, decided after *Colorado River*, rejected the contention that this higher standard applied to actions involving only declaratory judgments, *Wilton*, 515 U.S. at 286.

In *Wilton*, the Supreme Court recognized that "[s]ince its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* at 286. Specifically, the *Wilton* court found that "[t]he statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface." *Id.* at 286–87 (citing Shapiro, *Jurisdiction and Discretion*, 60 N.Y.U. L. REV. 543 (1985); O. FISS & D. RENDLEMAN, INJUNCTIONS 106–08 (2d ed. 1984)). The *Wilton* Court characterized the Declaratory Judgment Act as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).

The United States Court of Appeals for the Fourth Circuit, recognizing the substantial discretion afforded to district courts under *Brillhart* and *Wilton*, has found that "[t]his discretion . . . is especially crucial when, as here, a parallel or related proceeding is pending in state court." *New Wellington Fin. Corp. v. Flagship Resort Development Corp.*, 416 F.3d 290, 297 (4th Cir. 2005) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 291, 295 (1942)). In *Riley*, the Fourth Circuit articulated the four *Brillhart/Wilton* factors a federal court must weigh when deciding whether to abstain from ruling on a declaratory judgment action:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*Riley v. Dozier Internet Law, PC*, 371 Fed. Appx. 399, 402 (4th Cir. 2010) (describing these four factors as the "*Kapiloff* factors" (citing *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493–94 (4th Cir. 1998)).

## III.

### Analysis:  The Court Will Abstain from Exercising Jurisdiction over Dynex Capital's Claim for Declaratory Relief Because of the Pending Suit in the Texas State Court

Quilling brings the Motion to Dismiss on three grounds:  (1) that the Court lacks personal jurisdiction over Quilling,[8] (2) that the suit must be abated and transferred to the Northern District of Texas or dismissed pursuant to the Anticipatory Suit Exception to the First-to-File Rule,[9] and (3) that Dynex Capital failed to state a claim upon which relief can be granted.

---

[8] Quilling asserts that the Court lacks personal jurisdiction over him because he (1) "does not have minimum contacts with the state of Virginia; and (2) maintaining the suit in Virginia will offend traditional notions of fair play and substantial justice." (Mem. Supp. Mot. Dismiss 8.) Quilling states that he has never visited Virginia and his only contact with Virginia exists as his "filing a judgment for full faith and credit." (*Id.* 9.) Quilling also retained a Virginia lawyer. Even based on this limited contact, the Court may properly exercise personal jurisdiction over Quilling in this action.

In *Balsly v. West Michigan Debt Collections, Inc.*, the court found that personal jurisdiction existed over a defendant when the defendant sought to domesticate a Michigan judgment in Virginia. No. 3:11cv642, 2012 WL 628490, at *1, *4 (E.D. Va. Feb. 27, 2012). In *Balsly*, the defendant acquired a debt Balsly owed a Virginia retailer. *Id.* at *1. When Balsly stopped paying on the debt, the defendant initiated a suit in Michigan state court and obtained a default judgment against Balsly in that matter. *Id.* The defendant then "retained an attorney in Virginia" and domesticated the judgment in a Virginia state court in an attempt to collect the debt by garnishing Balsly's wages. *Id.* The *Balsly* court found that "[u]nder Virginia law, a party who assumes the rights of a contract from a predecessor generally assumes the legal position of its predecessor." *Id.* at *3. Additionally, it found that the defendant "intentionally sought the protection of Virginia's judicial system when it domesticated the Michigan judgment in the Virginia courts," and that this constituted relevant contacts with Virginia for the purposes of deciding personal jurisdiction. *Id.* at *4 ("Because WMDC's use of Virginia court procedures was *intentional*, it 'purposefully availed' itself of the protections afforded in Virginia courts." (quoting *Mitrano v. Howes*, 377 F.3d 402, 407 (4th Cir. 2004)).

Here, similar to the defendant in *Balsly*, Quilling retained a Virginia attorney and *chose* to domesticate the Texas judgment in a Virginia state court. Further, Quilling asserts that he brought his claim "as receiver for Dynex Commercial." (Mem. Supp. Mot. Dismiss 11.) For the limited purpose of establishing personal jurisdiction, Quilling "stands in the shoes of" Dynex Commercial, Inc., a Virginia entity who would be subject to this Court's personal jurisdiction. The Court may properly exercise personal jurisdiction over Quilling. *See Balsly*, 2012 WL 628490 at *1, *4. Although the Court will deny the Motion to Dismiss on this ground, the Court will ultimately dismiss this case.

[9] Quilling initially asserted that the Court must dismiss Dynex Capital's complaint under the anticipatory suit exception to the First-to-File Rule. Because the Northern District of Texas

The Court previously found, *supra* note 8, that it may properly exercise personal

jurisdiction over Quilling. Because the Northern District of Texas remanded Quilling's action to

the Texas State Court, this Court—utilizing the standard articulated in *Brillhart*, reaffirmed in

*Wilton*, and expanded upon by the Fourth Circuit—will exercise the "substantial discretion"

afforded to it to abstain from ruling on Dynex Capital's request for a declaratory judgment.[10]

*See Wilton*, 515 U.S. at 286. Each of the four factors articulated by the Fourth Circuit in *Riley*

---

remanded Quilling's suit to the Texas State Court, it appears that the First-to-File Rule no longer applies to this matter. *Victaulic Co. v. Eastern Indus. Supplies, Inc.*, No: 6:13-01939, 2013 WL 6388761, at *2 (D.S.C. Dec. 6, 2013) ("The first-to-file rule provides that 'when multiple suits are filed *in different Federal courts* upon the same factual issue, the first or prior action is permitted to proceed to the exclusion of another subsequently filed.'" (emphasis added) (quoting *Allied-Gen. Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n. 1 (4th Cir. 1982))).

However, the Court would likely find dismissal appropriate under the anticipatory suit exception as well. Under the anticipatory suit exception to the first-to-file rule, a court exercising jurisdiction over the first-filed suit may decline to exercise jurisdiction over a case if that court finds that the plaintiff brought the matter in anticipation of the defendant filing suit. *See, e.g., Learning Network, Inc. v. Discovery Commc'ns, Inc.*, 11 Fed. App'x 297, 301 (4th Cir. 2001); *see also Tempco Elec. Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987). In applying this rule, courts have looked to whether the plaintiff in the first-filed suit brought his or her claim after being put on notice through a demand letter of the opposing party's intention to file suit. *See, e.g., Supreme Int'l. Corp. v. Anheuser-Busch, Inc.*, 972 F. Supp. 604, 605–06 (S.D. Fla. 1997); *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978), *abrogated on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990). As an extension of that principle, where the first-filed suit seeks declaratory relief that the plaintiff likely filed in anticipation of the later-filed action, asserting other claims, courts have allowed the second filed suit to proceed. *See, e.g., Tempco Elec. Heater Corp.*, 819 F.2d at 749–50.

Here, Quilling sent the Demand Letter on May 10, 2018, which clearly indicated his intention to file suit if Dynex Capital did not respond. Rather than respond to the Demand Letter, Dynex Capital filed its Complaint in this Court just one week after Quilling sent the Demand Letter. One week after Dynex Capital filed this case and four days after he threatened to do so if he had not received a response from Dynex Capital, Quilling filed his complaint in the Texas State Court. In his complaint, Quilling asserts breach of contract claims. Because it appears that Dynex Capital likely filed its Complaint here in anticipation of Quilling's complaint filed in the Texas State Court, the Court would likely dismiss Dynex Capital's complaint under the anticipatory suit exception to the first-to-file rule.

[10] Although Quilling did not raise this ground in his Motion to Dismiss, both parties have addressed the issue. (Quilling's Resp. Jan. 31, 2019 Order ¶ 13, ECF No. 26 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)); Dynex Capital Resp. to Jan. 31, 2019 Order 9–11, ECF No. 25.)

for courts to weigh when assessing whether to abstain under the *Brillhart/Whilton* standard support this result. *Riley*, 371 Fed. Appx. at 402 (citing *Kapiloff*, 155 F.3d at 493–94).

### A. Texas Has a Greater Interest in Adjudicating This Matter in the Texas State Court

Because Texas has a "strong interest in having the issues decided in its courts[,]" the first factor weighs in favor of abstention. *Riley*, 371 Fed. App'x at 402.

Regarding Texas's interest, the related litigation has been ongoing in the state and federal courts of Texas for two decades. Critically, in the Demand Letter, Quilling seeks payment from Dynex Capital as partial payment of the Original Action Final Judgment, which the Texas State Court awarded to the Judgment Creditors. If this Court were to grant Dynex Capital's request for a declaration that it owes nothing to Quilling and Dynex Commercial, Inc. pursuant to the Litigation Cost Sharing Agreement, then such a ruling could affect the Judgment Creditor's ability to collect the Original Action Final Judgment. Similarly, if the Court were to deny Dynex Capital's request, then it would affect the Original Action Final Judgment by allowing the Judgment Creditors to recover a portion of the Original Action Final Judgment. Because the outcome of this case would affect a Texas state court judgment, Texas has a substantial interest in this matter. *See c.f. Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 338 (4th Cir. 2002).[11]

---

[11] In *Vulcan Chemical Technologies, Inc.*, the Fourth Circuit found that under the more stringent *Colorado-River* abstention doctrine the district court abused its discretion in failing to abstain from ruling in an action seeking to vacate an arbitration award. 297 F.3d at 340. In that case, the district court vacated an arbitration award after a California state court reached a final judgment affirming the arbitration award. *Id.* at 337.

Under *Colorado-River* abstention, a court may abstain from ruling in a matter where a competing state court action pends only under "exceptional circumstances." *Vulcan Chem. Techs., Inc.*, 297 F.3d at 340–41. The Court does not analyze whether it will exercise jurisdiction over Dynex Capital's request for a declaratory judgment under *Colorado-River* abstention because the Supreme Court has found that the more lenient standard articulated in *Brillhart/Wilton* applies to actions in which plaintiffs seek declaratory relief. *Wilton*, 515 U.S. at 289.

Although Virginia also has an interest in resolving this matter, that interest is not as substantial as that of Texas. As Dynex Capital asserts, it is a Virginia corporation and before Dynex Commercial, Inc. terminated its corporate existence, it too existed as a Virginia corporation. Two Virginia entities thus entered into the Litigation Cost Sharing Agreement. Furthermore, "[t]he laws of the Commonwealth of Virginia" govern the Litigation Cost Sharing Agreement. (Litig. Cost Sharing Agreement 2.) While this favors adjudicating this action in Virginia, the Texas State Court can ably apply Virginia law to the dispute. In sum, Texas has a stronger interest in adjudicating this matter than Virginia.

**B.**    **Because Resolving this Action May Result in Piecemeal Litigation in a Way that Resolving the Action in the Texas State Court Would Not, the Texas State Court Can More Efficiently Resolve This Matter**

Because the Texas State Court could "more efficiently" decide this issue, the second factor also weighs in favor of abstention. *Riley*, 371 Fed. App'x at 402.

To assess the second factor, courts look to elements such as the order in which the plaintiffs filed the state and federal claims,[12] whether the state or federal action has progressed farther than the competing action, and whether adjudication of the federal declaratory judgment suit will result in resolving the matter in a piecemeal fashion. *See Riley*, 371 Fed. App'x at 403; *Kapiloff*, 155 F.3d at 493–94.

---

[12] Here, Dynex Capital filed its Complaint in this Court on May 17, 2018, one week before Quilling filed his Third-Party Plaintiff's Original Petition in the Texas State Court. The parties do not dispute that this suit constitutes the first-filed suit. The Fourth Circuit has stated that "[a]s a general rule, 'the first suit should have priority, absent the showing of balance of convenience in favor of the second action." *Riley*, 371 Fed. App'x at 403 (quoting *Ellicot Mach. Corp. v. Modern Welding Co.*, 502 F.3d 178, 180 n.2 (4th Cir. 1974)). Although Dynex Capital filed this case first, because the Court finds that Dynex Capital likely filed suit in this Court as "mere 'procedural fencing,'" the Court will not weigh this element of the second factor in favor of this Court exercising jurisdiction in this matter. *See id.* (quoting *Kapiloff*, 155 F.3d at 493–94).

The relative progress of the two cases amounts to a neutral element of the second factor. Although Dynex Capital removed and the Northern District of Texas subsequently remanded the action pending before the Texas State Court, the court that originally awarded the Original Action Final Judgment to the Judgment Creditors, that case now sits at a similar procedural posture as the case pending before this Court. Specifically, Dynex Capital states that it has moved to dismiss the action before the Texas State Court based on a lack of subject matter jurisdiction. Similarly, Dynex Capital's case pending before this Court has not progressed beyond Quilling's Motion to Dismiss. Because both the Texas State Court action and the action before this Court remain at similar procedural postures, this element of the second factor does not favor one court over the other.

However, resolving the action before the Court may result in piecemeal litigation, meaning that the second *Brillhart* abstention factor weighs in favor of abstention. For instance, if the Court were to deny Dynex Capital's request for declaratory relief,[13] finding that the Litigation Cost Sharing Agreement creates an obligation for Dynex Capital to pay a portion of the Original Action Final Judgment, Quilling may have to bring another suit to collect from Dynex Capital. On the other hand, if the Texas State Court were to reach this result because Quilling brought substantive breach of contract claims, the Texas State Court could order Dynex Capital to pay Quilling the requested amount, something this Court could not do. Because resolving the declaratory judgment action may result in piecemeal litigation, the second factor weighs in favor of abstention.

---

[13] In dismissing this action, the Court passes no judgment on Dynex Capital's obligations under the Litigation Cost Sharing Agreement.

**C.** **Because Both Actions Center on the Same Issue, Unnecessary Entanglement May Occur Between This Court and the Texas State Court If the Court Exercises Jurisdiction in This Matter**

Because "'overlapping issues of fact or law' might create unnecessary 'entanglement'" between the Texas State Court and the Eastern District of Virginia, the third factor weighs in favor of abstention. *Riley*, 371 Fed. App'x at 402 (quoting *Kapiloff*, 155 F.3d at 493–94).

In *Riley*, the Fourth Circuit affirmed the district court's decision to abstain from ruling on the plaintiff's request for declaratory relief where a pending state court action asserting trademark infringement claims existed. *Id.* at 400, 405. In *Riley*, the Fourth Circuit found that the outcome of both the state court action and the federal court action seeking declaratory relief turned on the same inquiry. *Id.* at 403. The Fourth Circuit stated that "[e]ntanglement is all the more likely where, as here, common issues 'are already being litigated by the same parties in the related state court [sic] action.'" *Id.* (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 379 (4th Cir. 1994)).

Because, similar to *Riley*, the case pending before the Texas State Court and the action at bar concern "common issues '. . . already being litigated by the same parties in the related state court [sic] action,'" the third factor weighs heavily in favor of abstention. *Id.* (quoting *Nautilus Ins. Co.*, 15 F.3d at 379). Here, both Quilling's Texas State Court suit and Dynex Capital's declaratory judgment action involve the same parties: Quilling and Dynex Capital. Additionally, both cases center on the same question: Dynex Capital's obligations under the Litigation Cost Sharing Agreement to pay a portion of the Original Action Final Judgment. In this Virginia federal action, Dynex Capital explicitly requests that the Court declare that it has no obligation to Quilling or to Dynex Commercial, Inc. under the Litigation Cost Sharing Agreement. Similarly, although Quilling's Texas State Court case brings breach of contract

claims, it will also determine Dynex Capital's obligations under the Litigation Cost Sharing Agreement. If the Texas State Court and this Court reach opposite conclusions on this central question, "unnecessary 'entanglement'" would result between the two tribunals. *Id.* at 403.

Having ascertained that the first three factors favor abstention, the Court turns now to the fourth and final factor, whether it appears that Dynex Capital filed its action here as the result of forum shopping.

### D. Because Dynex Capital Appears to Have Filed This Action As the Result of Forum Shopping, the Fourth Factor Weighs in Favor of Abstention

Because Dynex Capital appears to have filed its case seeking declaratory relief in federal court for "mere 'procedural fencing,'" the fourth factor favors abstention. *Kapiloff*, 155 F.3d at 494 (quoting *Nautilus*, 15 F.3d at 377).

First, the timing of Dynex Capital's actions support the finding that it likely filed its suit in this Court as the result of "mere 'procedural fencing.'" *Id.* After twenty years of litigation in Texas state and federal courts, Dynex Capital filed its Complaint in this Court one week after Quilling sent the Demand Letter. Dynex Capital did not respond to the Demand Letter, which clearly warned that "[i]f payment is not received within ten (10) days of this letter, then [Quilling] shall proceed to obtain the same via appropriate legal process." (Demand Letter 2.) By these terms, Dynex Capital had until May 20, 2018, to pay Quilling the requested amount or to respond to the Demand Letter. On May 17, 2018, three days before the deadline, Dynex Capital filed suit in this Court rather than respond to the Demand Letter. Within four days of the deadline and one week after Dynex Capital filed its Complaint, on May 24, 2018, Quilling filed his complaint in the Texas State Court. This timing suggests that Dynex Capital filed suit in this Court in anticipation of Quilling filing suit in a Texas court.

Second, Virginia has little connection to any of the related litigation. Although the Litigation Cost Sharing Agreement identifies two cases filed in Virginia, the other three cases pended before Texas courts. The Texas litigation included at least two multi-million-dollar judgments, which became final only after several appeals. It also appears that litigation remains ongoing in the Fraudulent Transfer Action, a suit currently before the Northern District of Texas that involves Dynex Capital as a defendant. Dynex Capital's attempts to minimize the relationship of those cases to the current litigation do not persuade.

Moreover, the Northern District of Texas's decision to remand Quilling's case supports the Court's conclusion as to forum shopping. The Fourth Circuit has stated that "removal is the appropriate avenue into federal court, and a declaratory judgment action may not be used 'to achiev[e] a federal hearing in a case otherwise not removable.'" *Riley*, 371 Fed. App'x at 403–04 (quoting *Nautilus*, 15 F.3d at 377)). Here, Dynex Capital attempted to remove Quilling's action to the Northern District of Texas, but that court remanded the case back to the Texas State Court because "the removal of the third-party petition in this case does not fall into one of the limited exceptions to the rule prohibiting removal by third-party defendants recognized in this Circuit." *Quilling v. Dynex Capital, Inc.*, No. 3:18-cv-1618-K, 2019 WL 366426, at *3 (N.D. Tex.). In deciding to remand the case to the Texas State Court, the Northern District of Texas recognized that the case "involves a final judgment that has not been satisfied, and the state court that entered the final judgment is both the court that has been involved in the post-collection efforts and the court in which the third-party petition was filed." *Id.* Dynex Capital cannot use this declaratory judgment proceeding to gain federal court review of this matter when it may properly be decided in the Texas State Court. *See Riley*, 371 Fed. Appx. at 403–04.

Based on the events leading to Dynex Capital filing its complaint in this Court, the timeline of the related litigation, and the minimal connection to Virginia, it appears likely that Dynex Capital filed this case as the result of "mere 'procedural fencing.'" *Id.* (quoting *Kapiloff*, 155 F.3d at 493–94). As a result, the fourth factor also weighs in favor of abstention.

## IV. Conclusion

For the foregoing reasons, the Court will exercise the substantial discretion afforded to it under the Declaratory Judgment Act to abstain from ruling on Dynex Capital's request for declaratory relief. The Court will grant Quilling's Motion to Dismiss and dismiss without prejudice Dynex Capital's Complaint. The Court will also grant the Motion to Supplement.

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: 3/29/2019
Richmond, Virginia